**UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:07-cv-250-RJC**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| **THREE BURMESE STATUES,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

**THIS MATTER** is before the Court on the motion of Plaintiff United States of America for Summary Judgment and Final Order of Forfeiture pursuant to Federal Rules of Civil Procedure 56 and 58, as well as 19 U.S.C. § 1595a(c). (Doc. No. 12). Claimant Ronald C. Morgan filed a response in opposition to the motion. (Doc. No. 13). For the reasons stated below, the Court will **GRANT** the Motion for Summary Judgment and Final Order of Forfeiture.

### I. BACKGROUND

The United States filed a Verified Complaint for Forfeiture *In Rem* on June 29, 2007, seeking forfeiture of all right, title and interest in three statues purchased by Claimant during a trip to Thailand in November of 2005. (Doc. No. 1). The Complaint alleges that the three statues are products of Burma and presently in violation of federal law, which prohibits the importation of any article that is a product of Burma. See Burmese Freedom & Democracy Act of 2003, Pub. L. No. 108-61, 117 Stat. 864; 31 C.F.R.§ 537.203.

Claimant maintains that the statues are not in violation of federal law because he purchased the statues from vendors in Thailand on November 4, 2005, and has provided receipts of these transactions. Upon purchase, he arranged for their shipment to Charlotte, North Carolina. (Doc. No.

13-2: Claimant's Pet. at 1). In January of 2006, Claimant went to the Customs and Border Protection Port Office to claim his merchandise. The statues were described as works of art and collectors items. (Doc. No. 13-4: Haines Aff. ¶ 6). The Customs officer who met Claimant at the office asked an import specialist to further investigate the statues. (Id. at ¶ 8). This specialist, as well as a specialist from the Mint Museum in Charlotte, concluded that the statues were from Burma and possibly in violation of the Burmese embargo. (Id.). Photographs of the statues were sent to the Department of State for further analysis, where they were forwarded to Sylvia Fraser-Lu, a noted scholar of Burmese art, who also concluded that the statues were of Burmese origin and that they were not made in Thailand. (Id. at ¶¶ 9-10).

Upon further investigation of the vendors, undercover agents from the Immigration and Customs Enforcement in Thailand found that the vendors were aware of laws barring Burmese goods from entering the United States, but were able to avoid legal issues by having the freight forwarders produce documents to conceal the true origin of such items. (Id. at ¶¶ 19, 23).

Because of the questionable origin of the statues and the dates of purchase and import into the country, the United States finds the items subject to seizure and filed a Motion for Summary Judgment and Final Order of Forfeiture pursuant to this claim on March 20, 2008. (Doc. No. 12). Claimant filed a Response to the Motion for Summary Judgment on May 6, 2008. (Doc. No. 13). Though the initial Response did not appear timely, the United States filed a Reply to the Claimant's Response to United States's Motion for Summary Judgment on May 14, 2008. (Doc. No. 14).

## II. STANDARD OF PROOF

A. **Standards of Proof for Forfeiture**

The United States must show that there was probable cause for the forfeiture of the seized

property. United States v. One Lucite Ball Containing Lunar Material, 252 F. Supp. 2d 1367, 1377 (S.D.Fla. 2003). In order to show probable cause, the United States must have "reasonable grounds" to believe the property is subject to forfeiture. United States v. 863 Iranian Carpets, 981 F. Supp. 746, 748 (N.D.N.Y. 1997). Such grounds need not amount to prima facie proof, but must be more than that which gives rise to mere suspicion. United States v. One 1978 Piper Cherokee Aircraft, 91 F. 3d 1204, 1208 (9th Cir. 1996). If the government shows probable cause for forfeiture, the burden then shifts to the Claimant to show by a preponderance of the evidence that forfeiture is inappropriate. One Lucite Ball, 252 F. Supp. 2d at 1377.

### B. Standard for Summary Judgment

Pursuant to the Federal Rules of Civil Procedure, summary judgment is appropriate where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of showing an absence of a genuine issue of material fact falls to the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). While the court will draw only reasonable inferences in favor of the non-moving party, United States v. Diebold, Inc., 369 U.S. 654, 655 (1962), that party must also set forth specific facts showing that there is a genuine factual issue that must be resolved at trial, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

### C. Applicable Statutes

Merchandise introduced into the country contrary to law may be forfeited if "its importation or entry requires a license, permit or other authorization of an agency of the United States government and the merchandise is not accompanied by such license, permit, or authorization." 19

3

U.S.C. § 1595a(c)(2)(B). On July 28, 2003, Congress, in order to "sanction the ruling Burmese military junta," enacted the Burmese Freedom and Democracy Act of 2003. Pub. L. No. 108-61, 117 Stat. 864, 864. The Act required the President to enforce a ban after August 28, 2003, on "the importation of any article that is a product of Burma." Id. at 865. The Act allows the President to waive the ban if the waiver would be "in the national interest of the United States." Id. at 867. The President has delegated the waiver authority to the Secretary of State, but no such waiver has been effected. 31 C.F.R. § 537.203, Note.

The ban on the importation of Burmese products has been stated in the enabling regulation: "Except as otherwise authorized, and notwithstanding any contracts entered into or any license or permit granted prior to August 28, 2003, the importation into the United States of any article that is a product of Burma is prohibited." 31 C.F.R. § 537.203. Congress, however, made an exception for products that were "in the pipeline" at the time of the passage of the Act in 2003:

> The importation of an article that is a product of Burma, otherwise prohibited by § 537.203, is authorized, provided the article was purchased prior to July 28, 2003, shipped from Burma to the United States prior to August 28, 2003, and is not property in which a person whose property or interests in property are blocked pursuant to § 537.201(a) has an interest.

31 C.F.R. § 537.516(a). "Blocked" persons are certain named persons and certain government officials of Burma and persons and businesses dealing with them. 31 C.F.R. § 537.201(a). Claimant is not one of those persons.

### III. DISCUSSION

Here, the distinct factual questions center on the dates of purchase and importation of the items, as well as their origin. Both parties stipulate that Claimant purchased the statues in November of 2005 during a trip to Thailand, and that the statues entered the United States when Claimant had

4

returned by way of Charlotte, North Carolina, in January of 2006. (Doc. No. 1: Haines Aff. ¶ 5; Doc. No. 13-2: Claimant's Pet. at 1.) There is no dispute that the articles were purchased after July 28, 2003 and entered the country after August 28, 2003.

The United States consulted with four experts who all agreed that the statues were Burmese in origin. (Doc. No. 1: Haines Aff. ¶¶ 8-11). Fraser-Lu, a world renowned expert in Burmese art stated that such statues ("stone objects"):

> are definitely Burmese in origin . . . The statues appear to be made of locally available marble or alabaster in the Ava-Amarapura area of Burma. The Buddha images . . . probably date to the eighteen/nineteenth century and are made in what is known in Burmese art as the 'Ava' style . . . . The earth goddess stylistically is probably a bit later c. late nineteenth century and has been rendered in the more realistic 'Mandalay' style. Such statues are not made elsewhere in Asia. These appear to be genuine artifacts from Burma.

(Doc. No. 12-4: Fraser-Lu's Aff. at 1). Through the expert opinions, this Court concludes that the United States has shown probable cause that the statues are products of Burma and thus subject to forfeiture.

Claimant denies that the statues are Burmese and instead interprets the description of the statues as referring to the style of design, rather than their geographic place of origin. (Doc. No. 13-2: Claimant's Pet. at 3). Claimant fails, however, to provide any evidence that would contradict the experts' opinions that the statues are originally from Burma.[1] Where the opposing party presents no evidence sufficient to make an issue of the expert's credibility, such as contrary opinion evidence

---

[1] Claimant has provided letters from the Thai vendors stating that the statues were in the vendors' possession for over four years and were purchased near the border of Thailand. (Doc. No. 13-2: Claimant's Pet. at 16-17). These submissions, however, do not create a genuine issue of material fact regarding the Burmese origin of the statues. Additionally, the Thai vendors' willingness to conceal the true origin of the statues when approached by undercover investigators indicated that the purchase of Burmese products from these vendors was commonplace. (Doc. No. 1: Haines Aff. ¶¶ 19, 23). Claimant, therefore, has failed to show by a preponderance of the evidence that forfeiture is inappropriate.

or evidence tending to undermine the credibility or qualifications of the expert, and where the trier of fact would not be at liberty to disregard arbitrarily the unequivocal, uncontradicted, and unimpeached testimony of the expert witness, the expert's testimony may form the basis for summary judgment. Webster v. Offshore Food Serv., Inc., 434 F.2d 1191, 1193-94 (5th Cir. 1970), *cert. denied*, 404 U.S. 823 (1971). Claimant has not adequately contravened the weighty expert testimony and thus the origin of the statues is not in question. Without any genuine issue of material fact regarding the statues' origin, date of purchase, or date of importation, judgment as a matter of law is appropriate.

### C. Application of 31 C.F.R. § 537.516(c)(1)

Claimant, however, argues that the government has not proved all of the necessary components to justify forfeiture because it has overlooked the application of 31 C.F.R. § 537.516(c)(1). Claimant maintains that this subsection provides him with an exception for keeping the statues regardless of other prohibitions. Pursuant to this section, Claimant states that his purchase of the statues was authorized because it was "directly incident to the importation into a country other than the United States or Burma." 31 C.F.R. § 537.516(c). Claimant contends that his purchase of the goods in Thailand triggers the application of this section along with the three factors outlined in subsection 31 C.F.R. § 537.516(c)(1). If the article was purchased by the Thai owner before July 28, 2003, shipped from Burma to Thailand before August 28, 2003, and if the purchaser was not part a member of the blocked list in 31 C.F.R. § 537.201(a), then the transaction involving Claimant would be authorized. This Court finds that section inapplicable.

The plain text of § 537.516(c) defeats Claimant's argument. Here, the text simply states that the section refers to all those transactions that are "otherwise prohibited by Section 537.201 and

6

537.202." 31 C.F.R. § 537.516(c). Therefore, it appears that for this section to be applicable, a transaction must be prohibited by each of the aforementioned subsections. Claimant is not a Burmese official falling within § 537.201 and is not involved in the exportation of financial services to Burma under § 537.202, thus § 537.516(c) does not apply. Because 31 C.F.R. § 537.516(c)(1) does not apply, the date of purchase and import by the Thai buyer from the Burmese seller is irrelevant, and the issue can be resolved merely through application of the law discussed herein.

### III. CONCLUSION

Since the government has provided uncontradicted evidence that the purchase and sale of these statues occurred after the respective restricted dates and that the statues did originate in and are "products of" Burma, the government has satisfied its burden of proof. By failing to offer evidence regarding the origin of the statues, Claimant has failed to show by a preponderance of the evidence that forfeiture is inappropriate and has not set forth specific facts showing that there is a genuine issue of material fact.

**IT IS, THEREFORE, ORDERED** that the United States' Motion for Summary Judgment and Final Order of Forfeiture is **GRANTED**.

Signed: June 24, 2008

Robert J. Conrad, Jr.
Chief United States District Judge